WENZEL KARES *vs.* ALEXANDER H. COVELL.

Bristol. November 14, 1901. — January 1, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Contract,* Rescission, Construction.

If one makes payments upon a bond to convey to him certain land free of incumbrances, and before the conveyance one quarter of the land is taken for the widening of a highway, he may either take what the obligor can give and hold him answerable in damages for the rest or rescind the contract and recover back the money he has paid.

A condition in a bond to convey real estate, that the obligor shall convey the land by a good and sufficient deed "conveying a good and clear title to the same, free from all encumbrances," refers to the title which is to pass by the deed, and not to the state of things existing at the time of the execution of the bond. Thus, if after the execution of the bond one quarter of the land is taken for the widening of a highway, the obligor is substantially unable to perform his contract and the holder of the bond may recover back any payments he has made upon it.

CONTRACT for $510 paid to the defendant upon a bond to convey certain land on Acushnet Avenue in New Bedford to one Anderly, assigned by Anderly's administrator to the plaintiff. Writ dated June 13, 1900.

In the Superior Court the case was heard upon agreed facts by *Lawton,* J., without a jury. The bond was dated April 27, 1896. The preamble and condition were as follows:

"The condition of this obligation is such, that 'whereas the said obligor has agreed to sell and convey unto the said obligee a certain parcel of real estate, situated in New Bedford and

bounded as follows, namely, [Description]. The same to be conveyed by a good and sufficient deed of the said obligor, conveying a good and clear title to the same, free from all encumbrances. And whereas for such deed and conveyance it is agreed that the said obligee shall pay the sum of thirteen hundred dollars, of which three hundred dollars have been paid this day, and one thousand dollars are to be paid in cash upon the delivery of said deed at any time within three years from the date of this bond, with interest at the rate of six per cent per annum, the interest to be paid semi-annually, also the obligee to pay the taxes after 1896. Now therefore if the said obligor shall, upon tender by the said obligee of the aforesaid cash, at any time within three years from this date, deliver unto the said obligee a good and sufficient deed as aforesaid, then this obligation shall be void, otherwise it shall be and remain in full force and virtue."

The lot contained about twenty-seven square rods of land. On December 12, 1899, the city of New Bedford took for a widening of Acushnet Avenue a strip of this land varying in width from fourteen to seventeen feet and containing about six square rods.

The defendant tendered to the plaintiff a deed which conveyed a good and sufficient title to the property described in the bond free of all incumbrances except that created by the taking of the strip of land by the city. This the plaintiff refused to accept.

The defendant requested certain rulings which were refused by the judge. The substance of those that are material is stated in the opinion of the court. The judge found for the plaintiff in the sum of $549.95; and the defendant alleged exceptions.

*T. F. Desmond,* for the defendant.

*W. C. Parker & E. Sullavou,* for the plaintiff.

HAMMOND, J. The lot of land called for by the bond contained nearly twenty-seven square rods, and the title was to be free from all incumbrances. By reason of the taking of nearly one fourth of it for highway purposes, between the time of the execution of the bond and the time for the delivery of the deed, the trial judge found that it was impossible for the defendant substantially to perform his contract, and that it did not appear

that this condition of things was in any way caused by the plaintiff.

No part of the money was paid for any specific part of the land, but the whole price was paid for the whole land, and the whole land was to be free from incumbrances. The contract was entire. If, therefore, the bond is to be interpreted as an agreement to convey the whole land free of incumbrances at the time of the delivery of the deed, it is manifest that the defendant cannot do what he agreed to do, and there has been at least a partial failure of consideration in the case of an entire contract. Under these circumstances, the plaintiff may at his election take what the defendant can give him, and hold the defendant answerable to him in damages as to the rest, or when the parties may be put *in statu quo*, he may rescind the contract and recover back the money he has paid. The plaintiff has chosen to rescind.

We do not understand the defendant to contest that this would be the rule if the true construction of the bond is that the title must be free from incumbrances at the time the deed is to be delivered. He contends, however, that the inability to give a good title which would excuse the plaintiff from paying the purchase price and entitle him to recover back the money already paid must be the result of a want of a good title in the obligor at the time the bond was given, or of some act of the obligor after the bond was given; and he has made an elaborate argument in support of that contention. But the contention does not seem to us sound. The argument proceeds upon the assumption that by the bond an equitable interest in the land is transferred to the obligee, and that the provision that the land shall be free of incumbrance at the time of the delivery of the deed is in the nature of a covenant like the covenant against incumbrances or of warranty in a warranty deed, or that for quiet enjoyment in a lease; and that inasmuch as these are held applicable only to incumbrances outstanding at the time of the deed or lease, (*Ellis* v. *Welch*, 6 Mass. 246, *Patterson* v. *Boston*, 20 Pick. 159,) such should be the rule in the case of the bond in this case. He further argues that, inasmuch as all land is held subject to the liability to be taken for public purposes under the right of eminent domain, and that where it is so taken, as in

this case, after the covenant, the taking is not regarded as a breach of the covenant, (*Ellis* v. *Welch* and *Patterson* v. *Boston,* *ubi supra,*) the rule should be the same in the case of this bond.

The cases upon which the defendant relies are inapplicable. Where the title passes, as in a warranty deed or lease, it is certainly true that the covenants have reference only to rights outstanding at the time of the delivery of the deed or lease, and that a subsequent taking by the sovereign power for public purposes is not a breach of the covenant, for the simple liability to be taken is not an incumbrance until the power has been exercised. But in the case of a bond like this, while the obligee, for certain purposes and as against the obligor, may have certain rights to the land which may be enforced in equity, still the bond is simply the preliminary contract. It contemplates and provides for another and final contract to be executed in the future, by which the legal title will pass, and the object of this preliminary contract is to settle among other things the terms of that final contract. It would seem to be clear that when by the terms of this preliminary contract it is provided that when the time comes for the execution of the final contract the land is "to be conveyed by a good and sufficient deed of the said obligor, conveying a good and clear title to the same, free from all incumbrances," the language refers to the title which is to pass by the deed, and not to the state of things existing at the time of the preliminary contract.

It follows that since the defendant is unable substantially to perform his contract, the plaintiff may rescind and recover back what he has paid. We see no material error in the manner in which the court dealt with the defendant's request for instructions.

*Exceptions overruled.*