[No. 35494.   Department Two.   November 9, 1960.]

THE CITY OF TACOMA, *Petitioner*, v. HUMBLE OIL & REFINING COMPANY *et al.*, *Respondents and Relators*, THE SUPERIOR COURT FOR LEWIS COUNTY, *John E. Murray, Judge, Respondent.*[1]

*Brodie & Fristoe* and *Hull, Armstrong & Vander Stoep,* for relators.

*The Attorney General, E. P. Donnelly* and *H. T. Hartinger, Assistants,* for relator State of Washington.

*Marshall McCormick, Paul J. Nolan, James F. Henriot,* and *Quinby R. Bingham,* for petitioner City of Tacoma.

FINLEY, J.—This case comes to us on a writ of certiorari to review an order of public use and necessity issued in a condemnation action. The city of Tacoma is engaged in the development of a hydroelectric project on the Cowlitz River to provide electricity for the needs of the city. A part of the project is the construction of the Mayfield Dam. The reser-

[1] Reported in 356 P. (2d) 586.

voir behind the dam will inundate land in which the relators have mineral rights. The city seeks condemnation of the fee simple interest in the land, which, of course, would include the mineral rights.

The relators do not deny that the creation of a reservoir for production of hydroelectric power is for a public use. *State ex rel. Chelan Electric Co. v. Superior Court* (1927), 142 Wash. 270, 253 Pac. 115, 58 A. L. R. 779. They recognize that the rule in this state, as phrased in *State ex rel. Tacoma School Dist. v. Stojack* (1958), 53 Wn. (2d) 55, 330 P. (2d) 567, 71 A. L. R. (2d) 1064, is that:

"Generally, the action of a public agency or a municipal corporation having the right of eminent domain in selecting land for a public use will not be controlled by the courts, except for a manifest abuse of discretion, violation of law, fraud, improper motives, or collusion. . . ."

The parties are agreed that "manifest abuse of discretion" is not indicated if the city has demonstrated a "reasonable necessity" for taking the mineral interests. *Seattle v. Faussett* (1923), 123 Wash. 613, 212 Pac. 1085. The dispute is over the correctness of the trial court's conclusion that it is reasonably necessary for the city to acquire the fee simple title to the land.

In the trial court the relators undertook to establish that there is no public necessity for the city's acquisition of the subsurface interests. They introduced substantial evidence to the effect that, through the use of directional (diagonal) drilling originating on land outside the reservoir area, it would be possible to tap oil and gas deposits under the reservoir without injury to the reservoir or its foundation.

The principal witness for the city was its chief engineer for the project, Mr. Carl Pflugmacher. He testified that his department had made a geological and topographical investigation of the dam and reservoir sites, and had recommended acquisition of the fee simple title to the reservoir lands; that the proposed method of drilling might raise problems of leaks into bypass channels (water seepage between strata), and would be inconsistent with the city's use of the reservoir; that surface residue from the drilling

operations could possibly pollute the reservoir water and injure fish life; that complications conceivably could arise because of old underground channels of the Cowlitz River; that subsurface drilling would perhaps cause subsidence of the bottom of the reservoir; that, based on experience in operating other reservoirs, he could foresee problems in connection with policing and maintenance of the reservoir itself; and that, notwithstanding the testimony of the relators' experts as to the safeguards employed in directional drilling, he was still of the opinion that, in order to operate and control the reservoir satisfactorily, the city should have the title in fee simple.

The relators presented a number of witnesses who testified that the fears expressed by Mr. Pflugmacher were ill-founded because of the practices employed in directional drilling and because of the geological characteristics of the area. The trial court was under no compulsion to accept their testimony in negation of that given by Mr. Pflugmacher. While we may not agree with the conclusion reached by the trial judge, it is supported by findings of fact which, in turn, are supported by substantial evidence in the record. Findings of fact supported by substantial evidence are controlling. We will not retry questions of fact in this court. *Schutz v. Schutz* (1960), 56 Wn. (2d) 969, 354 P. (2d) 694.

Relators point to some of the matters discussed in the trial judge's oral decision, rendered after the conclusion of the evidence. They argue that these are irrelevant in a hearing for an order of public use and necessity. Be that as it may, the argument is without merit for two reasons. *First,* we have held that a memorandum opinion may not be used to impeach the court's findings or judgment. *Clifford v. State* (1944), 20 Wn. (2d) 527, 148 P. (2d) 302. An oral decision should not be accorded more weight in this respect than a memorandum opinion. *Second,* in addition to the irrelevant considerations mentioned in the oral decision, the trial judge also referred to several of the pertinent considerations brought out in Mr. Pflugmacher's testimony. In any event, as we mentioned above, the testimony of Mr. Pflug-

macher alone presented the court with substantial evidence on which to base its decision.

■ Relators argue that the decision in *Pacific County v. North Pac. Imp. Co.* (1932), 170 Wash. 643, 17 P. (2d) 40, supports the proposition that a county condemning land on which to construct a road cannot acquire legal title to the minerals thereunder. In that case we cited the assignment of error which posed the question of acquisition of mineral rights as follows:

"Appellants also complain of an instruction to the effect that the county could, by condemnation, procure title only to the surface and sufficient of the soil beneath the surface to sustain the roadway; that it would not obtain title or possession to any minerals or other deposits beneath the surface of the soil *except within that distance beneath the soil necessary to support the highway.*" (Italics ours.)

In affirming the giving of this instruction, this court said:

"Undoubtedly, when a county acquires land for highway use, whether by fee or not, it has some kind of a legal title. It obtains title only to the surface and so much of the soil beneath to sustain the roadway. It obtains no title to minerals or other deposits beneath the surface. . . ."

A literal reading of the second quotation may suggest that the county acquires title only to supporting *soil* but not to supporting *minerals.* The unreasonableness of such a proposition is manifest, and reference to the instruction being discussed shows that we were fully in accord with the instruction that had been given, including the portion we have italicized. In the *Pacific County* case we simply restated the universal rule that the condemner may take no greater interest than is reasonably necessary for the contemplated public use or necessity. *State ex rel. Sternoff v. Superior Court* (1958), 52 Wn. (2d) 282, 325 P. (2d) 300; *State ex rel. Eastvold v. Superior Court* (1956), 48 Wn. (2d) 417, 294 P. (2d) 418; Annotation, 68 A. L. R. 837. If the public use requires that mineral rights be taken as incidental to acquisition of necessary control of the land, then the mineral rights come within the condemnation power.

Relators contend that the case of *State v. Guidry* (La., 1959), 109 So. (2d) 231, is squarely in point. In that case

the Louisiana Department of Highways obtained in the trial court an order vesting in the state the title in fee to a small parcel of shore land where it planned to construct a ferry slip. The owner of the land argued that the state's purposes could be fully achieved if it had only a servitude. The Louisiana Court of Appeal concluded that there was *no need* for the state to take a fee interest and modified the order to vest in the state a servitude, reserving to the owner the mineral rights. The difference between the *Guidry* case and the one now before us is that in the instant case the necessity for taking the mineral rights has been established by substantial evidence to the satisfaction of the trial court.

The judgment of the trial court should be affirmed. It is so ordered.

WEAVER, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.

---

March 27, 1961. Petition for rehearing denied.